Good morning, Your Honor. May it please the Court, my name is Catherine DeSormo, and I would like to reserve two minutes for rebuttal with the penalty. Your Honors, Lehigh County imprisoned Mr. Galarza for three days without a warrant, a court order, or any process based on an immigration detainer that lacked probable cause. That is undisputed. Lehigh County does not argue that Mr. Galarza's detention, as alleged, did not violate the Constitution. They don't argue that it did not violate the Constitution? No. Isn't that the whole reason we're here? Because you're arguing it is, and they're saying it didn't? Well, Lehigh County's arguing it's not liable. They're not disputing that he was detained without probable cause. They're simply arguing that they're not liable. I'm not sure that that is true. I think we're talking about, at least you do in your papers, you call it two different seizures. He was initially detained until sometime on Friday when he was arrested on a criminal offense. That's right. Then bail was set. At that point, somewhere right after bail being set, the detainer was faxed to the prison, and at that point you say there was a second detention under the detainer. Well, the second detention under the detainer began at the point when Mr. Galarza posted his bail. That's right. And bail was posted on Friday sometime. That's right. It's a little unclear what the hour was. But the detainer then kicked in once bail was posted. So actually, the prison had nothing to do with issuing the detainer. That's right. The detainer was issued from ICE to the prison. It was a request. It's clear that immigration detainers are requests and not orders, and that's clear because of the Tenth Amendment. If there's no constitutional violation, what injury did he suffer? Well, he was detained without probable cause in violation of the Constitution. This is a 1983 case, isn't it? That's right, Your Honor. It's a 1983 Monell case against the county. That's right. And what is the constitutional violation? Well, there are two constitutional violations. First, the Fourth Amendment violation that he was detained on the immigration detainer that lacked probable cause. Seizure without probable cause? That's right. And at the time when he posted bail, the basis for his state arrest was resolved. He should have been released from his state custody. You're saying at that point, the prison was required to do its own investigation or have a hearing to determine whether ICE had probable cause to believe that Appellant was an alien who could be subject to removal. That's your claim, isn't it? Well, it's slightly different, Your Honor. Our argument is that Lehigh County had a policy or custom of treating ICE detainers as a basis for up to five days of detention. With deliberate indifference to whether ICE had made a probable cause determination. Whether ICE made a probable cause determination. That's exactly right. So they have to decide. You say Lehigh County. The only involvement of the county I see is that they operate this prison. But in any event, that they have to make the prison here has to make a determination as to whether ICE had probable cause to issue the detainer. That's the issue. No, Your Honor. We're not asking the county to second guess ICE's determination. There was nothing to second guess here. The detainer simply said at Joint Appendix 105, the detainer says ICE has initiated an investigation into whether Mr. Galarza is an alien who is subject to removal. The initiation of an investigation, Your Honor, is not probable cause. So you're saying that the prison had to determine whether ICE had, let's just say, enough reason to do what it did. To say what it said and issue the detainer. Whether it was a request or whether it was a command to hold him. I don't think matters to me. Speaking only for myself. But the question is, they have to look at what ICE did and judge it. And give your client an opportunity to be heard on it. Well, no, Your Honor. Again, we do not believe that Lehigh County had an obligation or should have been involved in second guessing any determination. Can I ask you the same question along the same thought? What did the county do that was wrong? Well, the county treated this ICE detainer as a basis for warrantless detention. Three days of warrantless detention. Even though the detainer on its face does not purport to be based on a probable cause determination. What constitutional violation did the county commit? Well, that's a Fourth Amendment violation, Your Honor. This court held in Rogers v. Powell and in Berg v. Allegheny County that when two jurisdictions are involved in making an arrest, a requesting jurisdiction and an executing jurisdiction, if the requesting jurisdiction didn't have probable cause, the arrest is unlawful. So your point is that at some point the county itself should have conducted some sort of reasonable basis hearing. No, Your Honor. This is not a warrant. What did the county do wrong then? The county should have let him go on his bail, Your Honor. But that was for a different reason. The bail was posted on the criminal offense. That's right, Your Honor. The ICE detainer was because they were doing an investigation, and they had the three days, he was not held beyond the period of the detainer, to determine whether he was an alien subject to removal slash deportation. Your Honor, since Brown v. Illinois in 1975, it's been clear that the Fourth Amendment does not permit detentions based on a mere assertion of investigative interest. There must be probable cause. If your point is that this detainer is not a command, it's only a request from the United States government, and he has already posted bail on the underlying criminal charge, there was no basis to hold him at all. Is that your point? There was no constitutionally sufficient basis. He should have been released as soon as the bail was posted. That's right, Your Honor. How can we consider that when even indirectly where this regulation is unconstitutional, there's no government entity here before us that represents the federal government? Well, Your Honor, the federal government was a party to the case below. There's no one before the court. They settled under the federal court claimant. That's right, Your Honor, but we're not arguing that the regulation should be invalidated, that the statute is invalid. We're simply arguing that the district court's interpretation of this regulation, which no federal court had ever found that regulation to be mandatory before Judge Gardner did. And Judge Cowan makes a very good point. What difference does it make here? Because there doesn't seem to be any apparent articulation, at least to me, of what the county did wrong, other than do its own investigation to see if the detainer should have been honored or should have issued. Well, Your Honor, there are two... And I don't know how it makes that determination candidly, but that's another question. There are two things that the county did wrong here, Your Honor. And again, this is a Minnell claim, so we're arguing about the county's policy or custom of treating ICE detainers as a basis for detention. There are two things that make the county's policy or custom deliberately indifferent to the risk of unlawful detentions like Mr. Galarza's. Number one, this detainer form, as I noted, does not purport to be based on probable cause. It is based on a mere assertion of investigative interest, and that has been clearly established not to satisfy the Fourth Amendment. In the criminal context, this would never be the basis for three days of detention. What is the county to do when it's confronted with a detainer like this, which specifically says the detainer is a request in one paragraph? And then in the next paragraph, it says such agency shall maintain custody, so that there's a certain amount of ambiguity in the detainer. And the county says, well, I am directed to maintain custody. It says shall maintain custody. So where is the liability if the detainer says I have to keep him, and the other part of the detainer says this is a request? Well, Your Honor, I agree the detainer form is a little misleading. The Tenth Amendment, though, the Supreme Court decided in Prince v. United States in 1997 that the federal government cannot commandeer states or their political subdivisions to administer or enforce a federal program. That's clearly established. Now, in Owen v. City of Independence, the Supreme Court held that municipalities in the Nell Claims don't have qualified immunity. But even if they did, it's been clearly established for a long time. At the very least, our recent case in NCAA cast doubt on your theory because it emphasized that this court never has invalidated federal law based on anti-commandeering principles. Well, Your Honor, Prince invalidated a portion of the Brady Handgun Violence Prevention Act on precisely this ground in Prince. Do you think the United States should be before us on this issue? You want us essentially to decide what is required for a detainer to be constitutionally valid? That's what you're asking us to decide here. No, Your Honor, we're asking the court to decide what the county's liability is. How can they be liable if something is constitutional? Your Honor, it's not constitutional. The county has never argued that Mr. Galarza was held on probable cause. Let me just put it this way, speaking only for myself. I think those other defendants were quite right to settle with you. Let me just leave it that way. But we're left with the county who operated the prison. And you seem to be saying that the prison had to do something to see if there was probable cause because it's not recited in the detainer. Your Honor, the county should have released Mr. Galarza on his bail. ICE was not saying we had probable cause. You said it's a re-imprisonment. Once the bail was posted, you used the word re-imprisonment. Now you're into your Fourth Amendment, Clay. Re-imprisonment now on the detainer. That's right. So the bail didn't affect... He should have been released on the criminal offense, but now you've got the detainer. And now you're saying we have to investigate. The county had to investigate whether there was probable cause. No, Your Honor. The county should have released him because there was no constitutionally sufficient basis for that new period of imprisonment. The mere assertion of investigative interest, Brown v. Illinois, 1975, Dunaway v. New York. How is the prison supposed to know that? These are clearly established constitutional principles. Well, how can the state or a local officer be expected to use their judgment as to whether or not there's probable cause or reason to detain this person when the federal government tells them, and the federal government is the expert in immigration. Local officials don't really have any. ICE knows what's going on in immigration. And the federal government tells the local people to hold someone. What are the local people supposed to do at that point? They're receiving the word from the experts as to whether or not this person should be held for immigration purposes. For immigration investigation. And, Your Honor, investigation is not. It did say investigation in the detainer. It does. It says investigation has been initiated. I've heard the point in your brief is that the federal government cannot, under any circumstances, compel a local government to do its bidding. That's absolutely right, Your Honor. That's absolutely right. And in this case, the federal government cannot tell Lehigh County that it must hold this guy in custody. Well, that's your anti-commandeering. That's your anti-commandeering argument, which has never been held by this court to hold water. Your Honor, Prince v. United States, the Supreme Court held that the federal government, I see my time has expired, may I finish? The federal government cannot do background investigations in order to determine whether somebody can buy a handgun. That's right. Well, it can't force local law enforcement officials to do its work for it. Well, that's what you're asking us to do here. You're asking us to have the commandeering aspect, which this court has never addressed that as the law. Well, Your Honor, we're not asking you to invalidate the regulation. We're arguing that the district court's interpretation of the regulation, which has never been held by any district court before. That it was mandatory. That's right, that it was mandatory. What difference does it make under the facts of this case? Well, under the facts of this case, it matters because Lehigh County's sole defense, and the sole basis for the dismissal of our claims on 12b-6, was that even though his detention violated the Fourth Amendment, the county was required to hold him without probable cause. And that's not correct. Although ICE is not represented here, you are familiar with ICE's own statements about the effect that the detainer has. That's absolutely right. In other words, there is a policy underlying immigration detainers. That's absolutely right. What is that policy? So ICE has a policy of when it will issue immigration detainers. It has certain priorities. And ICE has changed its policies since this complaint was filed. Well, let me put it to you this way. If I am a local government and I want to know whether I have to hold somebody, I must hold somebody on this detainer, and I had to look for ICE's policy, what would I find? Your Honor, you would find ICE's statements from the 1990s, from the 2000s, saying detainers are requests. Localities are not required to honor them. It's a request to the locality. How does the local authority, the prison here, decide whether to honor the request? How would they know how to decide that? Without conducting an investigation slash hearing or notice an opportunity to be heard by the prisoner into what ICE knew at the time it sent it. Your Honor, we're not arguing that they should have done anything but look at the face of this detainer. It was a request. Face of the detainer. It was a request. That's right. Before they reject the request, which is what you say they should have done here, what would you have had them do? Before they could honor the request, what would you have had them do? Your Honor, they should have looked at the face of the detainer. The face of the detainer has four check boxes. The first one is ICE has initiated an investigation. That is not an assertion of probable cause. The second one is a notice to appear, which is a charging document has been issued. Third is a warrant for arrest has been issued. And the fourth is there is an order for removal. We're not arguing about those other three check boxes. Whether a county chooses to detain someone on those other three check boxes or not, that's not in front of the court. So you're saying did they have reason to hold them for an investigation? That's right. But how are they going to determine that without having a hearing and doing an investigation into the basis that ICE had to make that request? They don't need to do any investigation. There's no assertion of probable cause. So they can reject the request, just say, well, we reject your request for no reason.  They have to decide the facial sufficiency of a detainer. That's right, Your Honor, and in the criminal context. Is this what our law requires? Is this what you think the United States would say that the local prison, the county prison is supposed to do? I think the United States would say this is perfectly within the county's determination. What if Lehigh County said to ICE, thank you for your detainer, we're just going to ignore it. We don't have any space in our prisons. We don't want to pay for your detention. What if it said that? It certainly could, and there are many jurisdictions that say that. For example, in this circuit, Newark, New Jersey, the police department has a written policy whereby they will accept ICE detainers. They will not treat them as a basis for detention without more, but they will communicate with ICE. They'll share information with ICE to facilitate ICE taking custody of an individual if ICE chooses to do so, but they won't act as a jailer for ICE, and that is Newark's, that's within Newark's discretion. Of course, ICE settled here, too. I mean, everybody settled out with you except the county. That's right. That's right, Your Honor, and there are many jurisdictions around the country that do this. The state of Connecticut, the state of California, Champaign County, Illinois, similar to Newark, has a sheriff's department policy whereby they will not hold someone for up to five days on the basis of a detainer alone. Well, that's now, you could say that that's a political position that they've taken by reason of hindsight, but the question is that when this request was made, would it have been proper for a local official to disregard a federal command? Well, Your Honor, first, I don't agree that it's a federal command. By ICE's own position is that this is a request. The Tenth Amendment requires it, but I would also say that there's no, at the time that Mr. Galarza was detained, we have alleged in paragraph 22 of the First Amendment complaint that ICE had a history of issuing improper immigration detainers to Lehigh County and then canceling them. The county was on notice that ICE was issuing detainers without probable cause. Mr. Galarza was not the first to pass that. I noticed that in your paragraph 22. I know you cite that. You say that in your brief, and you cite, what is it, page 82 to 83 of the appendix to court the case, and that's your amended complaint you're citing, too. I don't know where the evidence is, but even assume there is some evidence. The question remains, as Judge Callen put it, whether it's a command or whether it's a request, what do they do before they could honor it? What do they have to do before they could honor it? Your Honor, all a county has to do to avoid liability is to not have a policy or custom of deliberate indifference to whether it's detaining people without probable cause. So they have to go back to ICE. Well, Your Honor, on the face of the detainer form, there is a business hour phone number and an after hours phone number. At the very least, the county should have told Mr. Galarza why he was being detained. They didn't tell him why until the third day. What if it had to make a probable cause determination? I'm sorry, Your Honor? What if the county had to make a probable cause determination? I guess the probable cause determination would hinge on are you a U.S. citizen or are you not a U.S. citizen? That's why there's a detainer, right? Because he is alleged to be an illegal immigrant. That's right. That was why there was a detainer. Your Honor. So I understand from the background in this case that this individual had a Social Security card, was born in North Amboy, New Jersey, was by all accounts an American citizen. That's right. That's right, Your Honor. And the jail officials, the prison officials knew that. The fact that they detained him anyway is evidence. His wallet was taken when he went to the prison. That's right. But they didn't need to look at it until later when he didn't find out there was a detainer until I think it was the Monday before he was released. Then when I found out, it was when they checked it. This doesn't seem, this does not seem, it seems like based on Detective Correa, who was a detective with the Allentown police, based on her belief that his story was a phony, which belief was wrong, that that's how the detainer came to be, which is why all the others have settled. Correct? Well, that is what we've alleged Detective Correa did. That's right. Maybe we can get you back on rebuttal because we've got to get over to the other side. Yes, Your Honor. You went over quite a bit and we'll hear what Lehigh County has to say. Yes, Your Honor. Thank you. Mr. Caffrey? Yes, Judge. My name is Thomas Caffrey and I'm here on behalf of Lehigh County. Judge, I think one of the important points that I'd like to make from the outset is that it is not Mr. Galarza's claim that the detainer violates the Constitution, specifically the Tenth Amendment. It's not Mr. Galarza's claim that Section 287.7 of the Code of Federal Regulations exceeds the authority granted to it by Congress. I think the position is that the U.S. government cannot tell Lehigh County what it can do or must do. Yes, Judge. I understand that argument. Do you agree or disagree with that? Well. In terms of enforcing a federal regulatory regime. The Prince case says that. I acknowledge that. The problem is that's not the claim made in this case. And if you notice, Judge Gardner doesn't talk about the constitutionality of this regulation. He doesn't talk about the Prince case. He doesn't refer to the anti-common theory doctrine. He doesn't, but he does say that he uses the word shall and he says that the county had to hold him. Judge Gardner interprets that regulation as the county interprets it, that it's a command to detain him. But the Prince case says that's not so. Well, first of all, the Prince case doesn't say anything about this federal regulation. It deals with the Brady Act. No, no. That's true, but it's decided under the Tenth Amendment, and the Tenth Amendment applies here, here, and there. And it applies, it just may very well apply here also. Well, I guess the point I'm trying to make, Judge, is very fundamental. If Mr. Galarza wished to challenge that particular regulation as being in violation of the Tenth Amendment, you make that claim. Well, that's not, that's, the claim here, look, given the absence of any language about an order in the detainer statute, how could we possibly affirm the district court in this case? They detained someone when there was no order from the federal government concerning a detainer. There was just this ambiguous request. Well, respectfully, Judge, I don't agree that that detainer is ambiguous. I think the language of 287.7 is clear. It does not refer to a detainer as a request to detain. That language is found nowhere in that regulation. If it's explicit, and the federal government cannot commandeer someone to do something which is unconstitutional, how can you possibly state that this is a legitimate holding of someone when there's no order saying that he be held? I guess what I'm saying is this, Judge, the issue of the constitutionality of the regulation is not before the court. It's not before the court. But the claims in this case, the focus is in the amended complaint. That focuses the claims that will be litigated in any case. But you see, Mr. Caffrey, here is the language that the district judge used. Once the immigration detainer is issued, the local, state, or federal agency then holding the individual shall maintain custody. I think that's wrong. I think that the word shall means you have to do this. But Judge Cowan, I think, is pointing out, no, the federal government cannot obligate you to do that. So it's, in essence, advisory, discretionary. It is only a request. Well, I don't know how else to argue with Judge except to say that. Except maybe you should pick up the thing I suggested to your friend on the other side and say why in this case it wouldn't make a difference. That even if it was a request, even if the judge erred in saying it was mandatory under the facts of this case, it doesn't really make a difference. For purposes of whether there was a constitutional violation. Well, I see where you're going, Judge. But I guess the way that I address and I prepared for argument is based upon what the claims were made by plaintiffs in the court below, how the district of court addressed those claims. And, again, you've asked me several times now about the Prince case and whether the federal government can command the local official to take action on behalf of the federal government. I know the Prince case says that. But that was not a claim made by the plaintiff in this case. I consider that claim irrelevant to the resolution of this case. Well, what authority do you have to hold someone when there's no order, there's nothing except this statement by the federal government that you should detain him? What authority do you have besides that statement from the federal government? Well, I think there are plenty of federal regulations that are enacted pursuant to statutory authority, just like here, that command local governments to take certain action. I don't think this is any different than many other federal regulations. We need to remember that this was a regulation that was promulgated by the state. This has the effect of law. So your position is that if the government makes a request, which is clearly unconstitutional, that, regardless, the state must, or a part of the state, must adhere to that request. Well, I can't answer that question because I don't agree with the premise of your question. You're saying that if we acknowledge that it's unconstitutional, we don't acknowledge that it's unconstitutional. You don't acknowledge that holding someone when there is no order or probable cause to hold him is unconstitutional? Well, what I'm saying, Judge. No, no. To answer the question, do you acknowledge that holding someone when there is no order from a court or probable cause hearing to hold him, that such a detainer, such a detaining of that person is constitutional? I don't know the answer to that. Oh, that's so basic. You know, let's move on to the next situation. The regulation, at best, I would even acknowledge, is ambiguous. In one part it says shall detain, and the other says we're just requesting that you retain someone. Judge, I. If it is ambiguous. I respectfully disagree. I don't think it's ambiguous at all. If it's ambiguous, okay. If we look at it as ambiguous. How do you surmount the constitutional premise that if there are two ways of looking at a statute, that we try and look at it so as not to make the statute or the regulation unconstitutional? If it's determined to be ambiguous. The courts are prone to look at it so as to state that it is not unconstitutional. In other words, the courts tend to try and save legislation and regulations. Now, if we were to look at this and say, at best, it's ambiguous, then we have to look at it and say, well, we don't want to make it unconstitutional. Well, I'm not sure where I'm following you, Judge. Where are you going with that? Well, to make it not unconstitutional, we'd have to say that you have no right to hold the person, because under basic law, you can't hold someone unless there's an order of a court or a probable cause hearing. If it's interpreted not to be a command, then it may be. I hear someone being held when there's been no probable cause hearing of any problem that he's guilty of or any order from a court. So how is your holding of that person legal? Well, it could perhaps be unconstitutional then, Judge. It could be. Well, if that's your position then, you held someone improperly. Well, our position has been from the beginning, and as the district court found, that it's not ambiguous, that it is a command. Suppose it is a command. Judge, we haven't varied from that position from the beginning. Assuming your position is correct, let's say it is a command from the federal government. Yes. How is that command a constitutional command? And how does that run against the anti-commandeering concepts that the federal government cannot tell the state to jump through a hoop, especially an unconstitutional hoop? Well, Judge, again, to answer in the same way that I've answered it before, that issue was not even addressed by the district court below, because the issue of the anti-commandeering doctrine is not part of the case. There was no claim made that this violates the anti-commandeering doctrine. There's no claim that it's ultra-virus. I think the problem is that if it is unconstitutional, you certainly can't ask us to ignore it because somebody didn't raise it below. If the very idea of compelling a state government to enforce a federal regulatory regime is unconstitutional, how do we ignore that? It was presented in the briefs. I would say this, Judge, and I say this respectfully. I don't think you can decide an issue that's not before you. Okay. Let me ask you this. I'll take it a slightly different way. I have quite a few statements that have been made by Immigration and Customs Enforcement, ICE, quite a few statements respecting their detainers, and I have yet to come across any statement that says that local governments are obligated, they're mandated to hold somebody on the basis of our detainer. I have many statements that say just the opposite. Right. So let me ask you, do you have any statement that has been made by ICE that when we issue a detainer, you must hold that person? This is what I have, Judge. I have the detainer form that was in use until 2010 when ICE decided to change the way that it views the regulation. But I have their statements that go back to 1999. Even current or past, has ICE ever said that when we sent Lehigh County a detainer, Lehigh County must hold that person? Well, let me just backtrack a second in answering that question. I know that counsel referred to statements made by ICE in 1990 or somewhere around then that the regulation should be interpreted as a request to detain. I don't agree with that. It would help because their interpretation of their own provisions would probably be entitled to, constitutional questions aside, would be entitled to some deference. Well, to answer those one by one, first of all, I'm not sure that there are any pronouncements made by ICE or its predecessor before 2010 concerning whether it's a request to detain or whether it's a command. Maybe they didn't make any pronouncement because it was assumed it was a command. If you recall from reading the material, this issue has only arisen recently. Why? I don't know. Because of a change in the administration? Because of a spate of lawsuits have been filed surrounding the regulation? But there's no question that that detainer form, which indicates to the local prison official, you shall detain, is the same detainer form that was in effect from at least 1997 until 2010. 2010 rolls around and suddenly ICE decides to change the way it looks at this regulation and this detainer form. Out of the blue. Well, there's no question that ICE now is doing a mea culpa. For political purposes, their posture now is different. Let's put it that way. They've changed their tune. But that doesn't make your holding of someone prior to their changing their tune constitutional. Well, that's why I think this case always comes back to how do you interpret that regulation? Is it a request or is it a command? Assume, based on your presumption, I would assume it's ambiguous, but let's take your position that it's a command. Yes. As a state, do you have to, are you obligated, can you follow an unconstitutional command? Since our position is going to be you cannot hold someone unless there's a court order or a probable cause hearing. Well, if you put yourself in the position of the prison official who gets this detainer and has been receiving this detainer for 20, 25 years. I sympathize with that person. I really do. But my sympathy cannot overcome what the law is. Well, my answer is no one has told that prison official. No court has ruled that that detainer is unconstitutional, and that's not the claim that's made in this case, Judge. That's my answer. Well, is your argument that he's entitled, the county is entitled to qualified immunity? No, that doesn't apply. Well, then it doesn't make any difference what you say. The basic question is whether or not, we're not dealing with qualified immunity. A county cannot have qualified immunity. All the individuals. Well, Judge, listen. Let's talk about the Prince case for a second. That was a case in which, at the district court level, there was a complaint filed that said, look, the Brady Act is unconstitutional because it violates the anti-commandeering doctrine. I'm sure other claims were made. What happened? They litigated that completely in the district court. That issue was on the table for discussion and disposition. It went up to the appellate court. It went up to the Supreme Court. The Supreme Court made the decision that it did. The issue that you've been peppering me with about today has not been on the table in this case. And what you're talking about doing is taking an issue and deciding the case based upon your decision on that issue when it's never been part of the case until now. Separate apart from whether it's part of the case, we don't have any, we don't have the federal government. We don't have ICE. We don't have anybody before us. They've all settled out. They did. Because they were the ones at fault here. Well, they were the ones at fault, but don't exclude yourself. You have to acknowledge that you held someone on the command of a, based upon what you, you held someone on a command of the federal government when that holding was without probable cause, no one gave you any probable cause, and no one gave you an order allowing you to hold that person. Let me just address, because we've talked many times today about whether there's been probable cause. If you go to the statute which the regulation implements, the regulation provides standards and procedures to implement Section 287 of the INA. Section 287 of the INA talks about the prerequisites before you can issue a detainer. One of them is there's an arrest for a violation of a controlled substance law. Secondly, an immigration official has reasonable suspicion, has reason to believe that this person is an alien. That terminology has been interpreted by many courts to mean probable cause. Mr. Caffrey, hypothetically speaking, if we were to redraft this detention provision and we were to take the shall provision out and simply make this a request, as apparently the federal government has stated is the correct policy, would you have grounds to hold Mr. Galarza in county prison? I would say probably not. There's no bones about the fact that the county detained this person. I guess that helps me understand your position better, because you're saying that the county based its decision on the word shall. In other words, it was obligatory that you hold him in custody. That's been our position from the beginning, Judge. I don't make any bones about that. Is it the case that no court has addressed whether that provision is constitutional or not? I don't believe so. You don't believe that any court has decided the constitutionality of it? I am not aware of any case that has addressed that issue. In fact, one of the district court cases that I cited, I believe it was a court in Tennessee, the same arguments were made in that case concerning the anti-commandeering doctrine, and the court said it's irrelevant because it's not part of the case. Mr. Capri, thank you very much. Well, thank you, Judge. Ms. Sormell? Thank you, Your Honors. I'd like to make a few responses and pick up where the discussion left off. You might talk about Mr. Capri's point that this issue was never raised before. Why should we now address the constitutionality of this detainer? Well, Your Honor, this issue was absolutely raised at the district court. In our complaint at paragraph 91, we specifically raised Prince, and we argued that the immigration detainer must be a request as a matter of the anti-commandeering doctrine. So we put it in our complaint, even though it's a legal argument, we didn't even need to. We briefed it in response to the motion to dismiss by Lehigh County, and we argued about Prince at the district court at oral argument. So this was absolutely raised below. I think maybe it's part of Mr. Capri's argument and some of the questions that were asked by Judge Barry that there seems to be something inherently unfair about imposing liability on the county when the county is sort of damned if you do and damned if you don't. The detainer says you may hold, but then it says you shall. And so it seemed to be ambiguous, and the county was doing what it thought it should do. Can you tell us why we should now send this case back so the county can be held liable? Yes, Your Honor. First of all, as Judge Cowan noted, there's no qualified immunity for counties. We did not sue an individual Lehigh prison official because an individual official could have raised a qualified immunity argument on that basis. The county, however, does not have qualified immunity, and the Prince case is from 1997. This is well-established constitutional law. More fundamentally, Your Honor, our argument is based on Lehigh County's deliberate indifference, and that's based on two facts. First, the fact that the detainer is patently, is facially insufficient. It advertises the lack of probable cause. And second, that it turned out 22. Suppose we hold that the detainer is ambiguous. Suppose we say it's ambiguous. Do we still have to stick it to the county if they had an ambiguous command that was unconstitutional from the federal government? Well, Your Honor, I think we're at the 12B6 stage. So we're not yet talking about sticking it to the county. We're talking about going to discover. Are they liable? Could they be found liable when they have a command from the federal government which is ambiguous and they proceed to go along with the federal government, the experts. The county knows nothing about immigration. ICE ambiguously requests them to or commands them, we don't know, to hold someone. Yes, Your Honor. Well, assuming it's ambiguous, I think that's all the more reason to look to ICE's and its predecessor INS's statements. Going back to 1993, INS's search and seizure manual says that the detention on a detainer is a request. How are we going to do this? We don't have ICE in front of us. What is this going to be? Is this going to be a trial with no defense? No, Your Honor, not at all. We are not arguing that the court should strike the regulation. We're not even arguing the court should interpret the regulation in a way that the federal government doesn't interpret it. The federal government interprets the regulation as a request, and every other federal court that had looked at this in other contexts, albeit before Judge Gardner. Should we go back to the facial sufficiency of the detainer? Well, both the facial sufficiency, Your Honor, and... And you're saying it on its face does not indicate that there was probable cause. Well, there's that, Your Honor, and there's paragraph 22 in the complaint where we've alleged a history of improper detainers that were not... Well, you're alleging a history, but... That's right. Well, Your Honor, we engaged in limited DOE discovery. We deposed the director of the Department of Corrections at Lehigh County, and we pled our complaint based on that limited discovery, and the facts that we have reason to believe are true. This is a motion to dismiss stage, Your Honor. Our facts must be accepted as true at this stage. You're coming off a 60-page opinion that the district judge put every fact in the light most favorable to you into that opinion. That's right, but the district judge dismissed our claims not based on the insufficiency of facts, but based on its misreading of the regulation. And, Your Honors, I think it's important to note... That's right, but you're saying your reading must prevail, and yet we have no one to contest your reading. Well, Your Honor, you have all these statements from ICE and INS saying that detainers are a request and, Your Honor, I think it's important to note we're not arguing that the regulation should be struck. We're offering a reading of the regulation that would save it from unconstitutionality and that is consistent with the view that every single federal court before Judge Gardner had taken that it's a request. Now, I think it's important to note... You're going to have to finish up. Just finish up. Oh, yes, I'm sorry, Your Honors. I just want to note, as Mr. Caffrey mentioned, there are two Middle District of Tennessee cases that decided that immigration detainers are orders. They did not consider the Tenth Amendment argument, and the first one, Rios-Quiroz, was based on Judge Gardner's decision in this case. The second one was based on Rios-Quiroz. So these are echoes of the district court's mistake in this case. The court must correct that mistake. Thank you very much for your very good arguments. Mr. Caffrey, thank you also. Thank you. We'll take the case under advisory.